Mercure, J.P.
Proceedings pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Columbia County) to, among other things, enforce an order of the Commissioner of Human Rights awarding damages to Jamie L. Colgrove and Natalie J. Thibeault.
In July 2008, Jamie L. Colgrove and Natalie J. Thibeault filed complaints with respondent alleging that petitioners engaged in unlawful discriminatory practices relating to employment in violation of the Human Rights Law. Following a hearing, an Administrative Law Judge determined that petitioners subjected Colgrove and Thibeault to sexual harassment and terminated their employment in retaliation after they complained, and recommended awarding damages of back pay and $5,000 for mental anguish and humiliation to each individual complainant. Thereafter, the Commissioner of Human Rights modified the recommended order by increasing the mental anguish award in each case to $20,000. Petitioners commenced the first of these proceedings to review the determination, and respondent filed a cross petition seeking enforcement of the Commissioner’s order.
Petitioners failed to perfect their proceeding and, thus, it is deemed to have been abandoned, along with their challenges to the determination (see 22 NYCRR 800.12; Matter of Whaley v Goord, 47 AD3d 1132, 1133 [2008]). Notwithstanding petitioners’ abandonment of their proceeding, however, respondent’s cross petition for enforcement requires us to determine whether *1107 substantial evidence supports its findings that petitioners subjected Colgrove and Thibeault to a hostile work environment and retaliated against them for opposing petitioners’ discriminatory practices (see Matter of New York State Div. of Human Rights v Young Legends, LLC, 90 AD3d 1265, 1266 [2011]; Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights, 28 AD3d 906, 906 [2006]). In that regard, “we note that the scope of judicial review under the Human Rights Law is extremely narrow and . . . [c]ourts may not weigh the evidence or reject [respondent’s] determination where the evidence is conflicting and room for choice exists” (Matter of State Div. of Human Rights [Granelle], 70 NY2d 100, 106 [1987]; see Matter of State Div. of Human Rights v County of Onondaga Sheriffs Dept., 71 NY2d 623, 630-631 [1988]).
A hostile work environment is present when “ ‘the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment’ ” (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 310 [2004], quoting Harris v Forklift Systems, Inc., 510 US 17, 21 [1993]; see Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights, 53 AD3d 823, 824 [2008]). Here, the testimony of Colgrove and Thibeault, along with that of the chef and another long-time employee who is also the mother of Colgrove, established that the owner of the diner, petitioner L’Houssine Siba, made sexual comments to Colgrove and Thibeault, including speaking about what he would do to them if he was not married and describing his past cheating on his wife. In addition, Siba straddled Thibeault when she was taking a break on the porch outside the diner, and sat down on Colgrove’s lap at the same location. On another occasion, Siba pulled on Colgrove’s pants to reveal a tattoo on her lower back while she was bent over to put a child in a carseat, and he pulled down Thibeault’s pants as she walked up the stairs in the diner, which required her to put down the item she was carrying to pull her pants back up. Siba also put his finger down the back of Thibeault’s pants while she was bending over to perform food preparation, and provided Colgrove with a revealing shirt that was too small, telling her that she would get bigger tips if she wore a smaller size. In our view, the foregoing amply supports the Commissioner’s finding that a hostile work environment existed; the testimony presented by petitioners to the contrary created a credibility issue for the Commissioner to resolve (see Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights, 53 AD3d at 824-825; Matter of R & B Autobody & Radiator, Inc. v *1108 New York State Div. of Human Rights, 31 AD3d 989, 990-991 [2006]; Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights, 28 AD3d at 906-907).
Similarly, we conclude that substantial evidence supports the Commissioner’s determination of retaliation. In order to establish a prima facie case of retaliation, a complainant “must show that (1) [he or] she has engaged in protected activity, (2) [his or] her employer was aware that [he or] she participated in such activity, (3) [he or] she suffered an adverse employment action based upon [his or] her activity, and (4) there is a causal connection between the protected activity and the adverse action” (Forrest v Jewish Guild for the Blind, 3 NY3d at 313). Colgrove and Thibeault testified that they were employed at the diner from 2001 until June 2008, when they complained about Siba’s behavior to the chef and Colgrove’s mother, who then told Siba of the complaints. Siba, who had purchased the diner in May 2008 through his corporation, petitioner West Taghkanic Diner II, Inc., fired Colgrove and Thibeault approximately one week after hearing of their complaints. Although Siba stated that he fired Colgrove and Thibeault because a customer called to complain that one waitress “[stood] up in the middle of the diner and . . . wave[d] her hair” and that the other smelled of alcohol, the Administrative Law Judge declined to credit his testimony in light of his failure to adequately identify either the caller or a cook who purportedly verified the caller’s claims. Further, Siba admitted that he did not terminate a male employee despite receiving a complaint that the employee was drinking alcohol on the job. Inasmuch as Colgrove and Thibeault demonstrated a prima facie case of retaliation and petitioners failed to demonstrate a legitimate, nondiscriminatory reason for their termination, we will not disturb the Commissioner’s finding that petitioners unlawfully retaliated against them (see Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights, 53 AD3d at 825-826; Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson, 41 AD3d 1138, 1140-1142 [2007], lv denied 10 NY3d 706 [2008]).
Finally, in light of the financial hardship and stress that they experienced upon being fired, as well as their emotional anguish and humiliation resulting from the inappropriate conduct and physical contact, we conclude that the compensatory awards of $20,000 each to Colgrove and Thibeault were supported by the evidence and comparable to awards for similar injuries (see Matter of New York State Off. of Mental Health v New York State Div. of Human Rights, 75 AD3d 1023, 1024-1025 [2010]; Matter of Anagnostakos v New York State Div. of Human Rights, 46 *1109 AD3d 992, 994 [2007]; Matter of State of New York v New York State Div. of Human Rights, 284 AD2d 882, 883-884 [2001]; Matter of Town of Lumberland v New York State Div. of Human Rights, 229 AD2d 631, 636-637 [1996]; see also Matter of Bell v New York State Div. of Human Rights, 36 AD3d 1129, 1132 [2007]). In addition, the back pay awards were adequately supported by the record and, inasmuch as Siba was both the perpetrator of the discrimination and owner of the diner, respondent is entitled to enforcement of the awards against both petitioners (see Patrowich v Chemical Bank, 63 NY2d 541, 542 [1984]; Matter of New York State Div. of Human Rights v Young Legends, LLC, 90 AD3d 1265, 1267 [2011], supra; Matter of State Div. of Human Rights v Koch, 60 AD3d 777, 777-778 [2009]).
Rose, McCarthy and Garry, JJ., concur.
Adjudged that the determination is confirmed, without costs, and petitions dismissed.